IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY D. GRITZ,

              Plaintiff,

v

MEIJER STORES
LIMITED PARTNERSHIP,

              Defendant.

_____/

**File No. 08CV1446**
**Judge Elaine E. Bucklo**
**Magistrate Judge Maria Valdez**

Jeffrey S. Rueble (MI-P34570)
Cynthia W. Warren (MI-P62034)
Meijer, Inc. - Legal Department
2929 Walker Avenue, N.W.
Grand Rapids, MI 49544
(616) 791-3006
Attorneys for Defendants

_____/

Anthony D. Gritz, In Pro Per
600 Cresenzo Court, Apt. D
New Lenox, IL 60451
(815) 485-4705

_____/

## DEFENDANT MEIJER'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THE CURRENT PROCEEDINGS

# I.    INTRODUCTION

Plaintiff, Anthony Gritz ("Mr. Gritz"), was originally hired by Defendant Meijer, Inc. (hereinafter referred to as "Meijer") on July 18, 1999 as a part-time grocery clerk. As a condition of his employment with Meijer, Mr. Gritz was required to comply with the provisions of the Meijer Team Member Dispute Resolution Procedure ("DRP") which includes a mandatory arbitration provision for claims, including those brought pursuant to Title VII of the Civil Rights Act.

Nevertheless, on March 11, 2008, subsequent to his termination, Mr. Gritz filed this action against Defendant Meijer. Since Mr. Gritz expressly agreed to resolve any disputes he might have with Meijer exclusively through Meijer's DRP, which requires dispute resolution through binding arbitration instead of the court system, Mr. Gritz's action must be arbitrated pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* and the DRP to which Mr. Gritz expressly agreed.  Accordingly, Meijer requests an order staying these proceedings, and compelling arbitration of Mr. Gritz's claims under the DRP.

# II.    STATEMENT OF FACTS

Mr. Gritz was hired by Meijer on July 18, 1999 as a part-time food clerk in the grocery department at Meijer Store #169 in Bolingbrook, Illinois. In August 2001, Mr. Gritz became a full time food clerk at Store #169. Mr. Gritz's position remained unchanged until the date of his discharge, effective December 23, 2005.[1]  Alighire Affidavit, ¶ 3, Exh. 1. As a condition of his employment with Meijer, Mr. Gritz accepted the terms set forth in his employment application which included the following arbitration provision:

> If I am hired into or later transferred or promoted to a non-bargaining unit
> position, **I agree to arbitrate any claim, controversy, dispute or complaint**

---

[1] The reasons for Mr. Gritz's discharge are neither relevant nor material to the issues before the Court in this action.

**arising out of or relating to the termination of my employment under any company arbitration policy and/or procedure which exists at the time of the termination of my employment and for which I am eligible.** *See* Employment Application attached to Affidavit of Wende Alighire, ¶ 4, Tab A, Exh. 1.

On July 17, 1999, Mr. Gritz signed the Meijer Company Policies and Procedures Receipt. *See* Alighire Affidavit, ¶ 5, Exh. 1, receipt attached at Tab B. Mr. Gritz signed this document three times. One signature indicated that Mr. Gritz received the Team Handbook. The receipt explained that the Team Handbook was a general reference for information on the company's policies and procedures. Mr. Gritz also signed the receipt to indicate that he had read and understood all the Meijer guidelines. Lastly, Mr. Gritz signed the receipt to indicate that he read and understood the terms contained in the Company Policies and Procedures Receipt, and that "in consideration of [his] employment, [he] agree[d] to follow the company's policies and procedures, including any amendments to existing policies and procedures and any policies and procedures hereafter adopted." *See id.*

At the time Mr. Gritz signed the Company Policies and Procedures Receipt, a Peer Review and Arbitration Procedures applied to hourly team members. The Peer Review and Arbitration Procedure was explained in the Team Handbook that Mr. Gritz received at the time he signed the Company Policies and Procedures Receipt on July 17, 1999. This procedure required hourly team members to submit any complaints regarding discipline, discrimination or discharge to a process called "Peer Review". *See* Alighire Affidavit, ¶ 6, Exh. 1. "Peer Review" referred to a panel comprised of six Meijer team members, three of whom were hourly and three of whom were in leadership at Meijer. The Peer Review panel, after a review of the information presented, issued a recommendation to the parties based upon the governing policies and procedures. *See id.* at ¶ 7, Exh. 1. A team member who was unsatisfied with the results of the Peer Review on discrimination or discharge issues was required to appeal that decision to

arbitration. *See id.* at ¶ 8, Exh. 1. The arbitrator was selected by the team member from a list of five arbitrators selected by the company. The company paid the costs of arbitration. *See id.* at ¶ 9, Exh. 1. The Peer Review and Arbitration Procedure remained in effect until March 22, 2004. *See id.* at ¶ 10, Exh. 1.

On March 22, 2004, Meijer implemented the Dispute Resolution Procedure. This policy applies to all team members employed at the time of the policy's adoption, except for officers of the company and team members covered by a collective bargaining agreement. This policy remains in affect today. *See* Alighire Affidavit, ¶ 11, Exh. 1.

The DRP provides that:

> "[b]y accepting employment with the company and/or **by continuing your employment after the effective date of the DRP**, you and the company mutually agree to be bound by the terms of the DRP and to **resolve all claims defined in the DRP as subject to arbitration through mandatory, final and binding arbitration, instead of through litigation in court**. That means **arbitration is your sole and exclusive means for resolving such disputes.** *See* Alighire Affidavit, ¶ 12, Exh. 1, referencing DRP at Tab E, p. 2. (Emphasis Added).

The DRP also provides that it "replaces all other dispute resolution policies or procedures that were in existence prior to the effective date" of the DRP.[2] *Id.*

Meijer used several different methods to inform its employees of the implementation and application of the DRP. First, at the time that the DRP was implemented, Meijer sent an email to all Team Members announcing the new arbitration policy. *See* Alighire Affidavit at ¶¶ 14-15, Exh. 1, Tab F. Second, an article was published in Meijer's on line company newsletter,

---

[2] The DRP procedure is more favorable to team members than the Peer Review and Arbitration Procedure. For example, the DRP does not require the team member to submit a complaint to Peer Review. Additionally, the DRP arbitrator selection procedure is more neutral than the procedure mandated by the former Peer Review and Arbitration Procedure. Unlike the Peer Review and Arbitration Procedure, the DRP provides the team member with two options in connection with the selection of an arbitrator. The first option is to select an arbitrator from a list of proposed neutral arbitrators selected by Meijer. If the team member finds the arbitrators on the list unacceptable, the team member may proceed with the second option which is to make a joint request to American Arbitration Association ("AAA") for a list of arbitrators from which both parties can choose. Alighire Affidavit, ¶ 13, Exh. 1.

"Transformation News," on March 26, 2004 announcing implementation of the DRP. *See id.* at ¶ 18, Exh. 1, Tab G. Third, an announcement was posted at all time clocks at all company offices and store locations. *See id.* at ¶ 19, Exh. 1, Tab H. Fourth, an announcement was posted on the Company's Infonet home page, where news and announcements were routinely posted. The Infonet was accessible to all employees from any computer in a store location. *See id.* at ¶ 20, Exh. 1. Lastly, the DRP was posted on the Company's online policy manual available through the Meijer Infonet. *See id.* at ¶ 17, Exh. 1. This was the manner in which all persons employed as of March 22, 2004 were informed of the implementation of the DRP. Current employees were not asked to sign an acknowledgment of receipt of the announcements or DRP policy due to the multiple methods in which they were made aware of its existence and application. *See id.* at ¶ 21, Exh. 1.

Mr. Gritz's assent to the Peer Review and Arbitration Procedure upon his employment with Meijer in 1999, as well as his assent to the DRP through his continued employment with Meijer, warrants the stay of the current proceeding and submission of this proceeding to arbitration.

## III.   ARGUMENT

### A.   Mr. Gritz's Action Is Subject To Mandatory Arbitration Under The Federal Arbitration Act.

Mr. Gritz's agreement to arbitrate, set forth through the provisions of the DRP, is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991). The FAA provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA further provides for a stay of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement.  9 U.S.C. § 3. Specifically, the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration. *Id.*

The purpose of the FAA is to ensure that private arbitration agreements are enforced to their terms. *See Volt Info. Sciences, Inc. v. Board of Trustees of Stanford Junior Univ.,* 489 U.S. 468, 478 (1989). Courts have allowed parties to "stipulate to whatever procedures they want to govern the arbitration of disputes." *See Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 709 (7th Cir. 1994). The FAA, and the strong federal policy favoring arbitration it embodies, requires courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth. Inc.,* 473 U.S. 614, 625-26 (1985); *Gilmer* 500 U.S. at 24-25 (the FAA manifests a "liberal federal policy favoring arbitration agreements"); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25; 103 S.Ct. 927, 941-942 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").  If a party to an arbitration agreement declines to proceed to arbitration, the FAA requires the court to compel arbitration. 9 U.S.C. § 4; *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 511, *reh'g denied,* 419 U.S. 885 (1974).

There can be no question that the claims Mr. Gritz asserts in this action are encompassed by his agreement to arbitrate. One of the statutes upon which Mr. Gritz seeks relief is Title VII.

Title VII of the Civil Rights Act specifically condones, if not encourages, the use of arbitration.

Title VII provides:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation mediation, fact finding, mini trials and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

Pub. L. No. 103-283, § 118 (amending Pub. L. No. 102-166); *see also Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999) (holding that Title VII claims can be subject to mandatory arbitration). As such, Meijer's motion should be granted and arbitration compelled.

**B.    The Binding Arbitration Provisions of the DRP Are Valid and Enforceable.**

An agreement to arbitrate is treated like any other contract. *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758-59 (7th Cir.2001). *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 149; 847 N.E.2d 99 (Ill., 2006). Whether the parties agreed to arbitrate is a matter of state contract law, in this case the law of Illinois. *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999). Illinois courts apply ordinary contract principles to arbitration agreements. *Melena*, 219 Ill.2d at 149.

In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract. *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 329, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977). Meijer's introduction of the Dispute Resolution Program and its mailing of materials related to the program to its employees, constitutes Meijer's "offer." Mr. Gritz's acknowledgement of his receipt of the Team Handbook and assent to the Meijer Company Policies and Procedures upon his employment with Meijer in 1999, as well as his express agreement in his employment application to arbitrate claims in connection with a termination, demonstrates his express agreement to be bound by then applicable Peer Review and Arbitration

Policy. His continued employment with Meijer subsequent to the enactment of the Meijer DRP, evidences his continued consent to submit all claims to arbitration. Under Illinios law, an employee can manifest acceptance to a contract through continued employment with the employer. *See Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). Mr. Gritz worked for Meijer for nearly 2 years (21 months) after Meijer's initial implementation of the Dispute Resolution Program on March 22, 2004.

Mr. Gritz's agreement to arbitrate was also supported by valid consideration. As long as the facts demonstrate that some consideration has been exchanged, Illinois courts generally will not inquire into the adequacy of consideration for a contract. *Sta-Ru Corp. v. Mahin*, 64 Ill.2d 330, 338, 1 Ill.Dec. 67, 356 N.E.2d 67 (1976). This consideration can be either a benefit to the employee or a detriment to the employer. *Pankow v. WestAmerica Mortgage Co.*, 740 F.Supp. 1309 (N.D.Ill.1990). Under Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements. *See, e.g., Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill.App.3d 131, 226 Ill.Dec. 331, 685 N.E.2d 434 (1997). The consideration provided by Meijer includes the following:

> ➤ In contrast to many Illinois employers, Meijer provided Mr. Gritz (and other team members) with "just cause" employment (Alighire Affidavit, ¶ 22, Exh. 1);

> ➤ The plaintiff agreed to abide by Company policies and procedures in exchange for his employment with Meijer (Alighire Affidavit, ¶¶ 5, 11, Exh 1, DRP at Tab E, p. 2; Policies and Procedures Receipt, Tab B.)

> ➤ Meijer agreed to be bound by the DRP (Alighire Affidavit, ¶ 11, Exh 1, DRP at Tab E, p. 2);

> ➤ Meijer agreed to be bound by the arbitrator's decision; (Alighire Affidavit, ¶ 11, Exh 1, DRP at Tab E, Rule 25, p. 10); and

> ➤ Meijer agreed to pay the arbitrator's fees and expenses. (Alighire Affidavit, ¶ 11, Exh 1, DRP at Tab E, Rule 26, p. 11).

*See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (promise to be bound by arbitration process serves as mutual consideration); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir. 1999) (finding sufficient consideration in promise to employ because both parties were bound by arbitration). *See Ackerman*, 634 N.E.2d at 781 (an agreement by an employer to continue employment *at-will* is adequate consideration to support a binding promise from an employee); *See e.g., Tinder v. Pinkerton Security*, 305 F.3d 728, 731-732 (7th Cir. 2002) (holding that under Wisconsin law, employee's continued employment past effective date of arbitration program was sufficient consideration for employee's promise to arbitrate).

With the presence of an offer, acceptance, and consideration, a valid contract has been formed.[3] This valid contract constitutes an agreement to arbitrate disputes arising from Mr. Gritz's employment with Meijer. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) When arbitration agreements are interpreted, "every doubt is resolved in favor of arbitration." *Dickinson v. Heinold Sec., Inc.,* 661 F.2d 638, 643 (7th Cir.1981). Thus,

---

[3]Additionally, under Illinois law, Mr. Gritz became bound by the DRP by receiving the benefit of continued  just-cause employment for more than nearly two years after implementation of the DRP policy (in addition to remaining employed for 5 years during application of the Peer Review and Arbitration policy). *See Corbett v. Devon Bank*, 12 Ill.App.3d 559, 574, 299 N.E.2d 521, 530 (1973) ("A party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations.")

arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

### C.    Mr. Gritz's Claims Fall Within the Scope of the Arbitration Agreement

Mr. Gritz's claims are clearly covered by the Agreement. Mr. Gritz states that his complaint is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination Employment Act and the Americans with Disabilities Act. Mr. Gritz alleges that Meijer discriminated against him during the course of his employment with Meijer. The DRP applies to "all claims that arise out of or relate to the team member's employment and/or separation from employment with Meijer and that concern legally protected rights for which a court would be authorized by law to grant relief are subject to arbitration." *See* DRP attached to Alighire Affidavit, ¶ 11, Tab E, p. 7, Exh. 1. The presumption in favor of arbitrability applies with particular force where, as here, a contract contains a broad arbitration clause. *See AT&T,* 475 U.S. at 650.

Moreover, the Agreement expressly identifies the precise claims that Mr. Gritz has asserted – i.e., statutory claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Age Discrimination Employment Act and Americans with Disabilities Act – as being subject to arbitration.[4] Because Mr. Gritz's claims fall within the scope of the Agreement and Mr. Gritz has agreed to be bound by the terms of that Agreement, he has specifically agreed to submit the claims asserted in his Complaint to arbitration rather than litigation.

---

[4] The DRP provides examples of specific statutory claims subject to arbitration. The DRP states that such statutes include, but are not limited to, the ADEA, Title VII, 42 USC § 1981, the ADA, the FLSA, the Employee Polygraph Protection Act and the FMLA. (Alighire Affidavit, ¶ 11, Exh 1, DRP attached at Tab E, p. 8).

**D.     The Court Should Stay These Proceedings and Compel Arbitration**

When an issue in a proceeding is subject to arbitration under the FAA, the statute provides that a trial court "shall on application of one of the parties stay the trial of the action until such arbitration has been held[.]" 9 U.S.C. § 3. Arbitration is designed to save time, money and effort by substituting for the litigation process the advantages of speed, simplicity and economy associated with nonjudicial dispute resolution. *See e.g., Booth v. Hume Publishing. Inc.,* 902 F.2d 925 (11th Cir. 1990). Once it is determined that the claims asserted in a pending court action are subject to an arbitration agreement, the FAA mandates that the action be stayed. 9 U.S.C. § 3. Therefore, in order not to undermine the benefits of arbitration, to conserve judicial resources and to avoid potentially wasteful and unnecessary activity by the parties, all further proceedings in this action should be stayed and Mr. Gritz should be compelled to arbitrate this action.

## IV.     CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Compel Arbitration and Stay the Current Proceedings.

Respectfully submitted,

Dated: August 28, 2008

By:     */s/ Cynthia W. Warren*
　　　　　Cynthia W. Warren (MI-P62034)
　　　　　Meijer Legal Department
　　　　　2929 Walker Avenue, N.W.
　　　　　Grand Rapids, MI  49544
　　　　　Phone:  (616) 735-7553
　　　　　Fax:     (616) 791-5349
　　　　　Email:  Cynthia.Warren@Meijer.com
　　　　　Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY D. GRITZ,

        Plaintiff,

v

MEIJER STORES
LIMITED PARTNERSHIP,

        Defendant.

_____/

File No. 08CV1446
Judge Elaine E. Bucklo
Magistrate Judge Maria Valdez

Jeffrey S. Rueble (MI-P34570)
Cynthia W. Warren (MI-P62034)
Meijer, Inc. - Legal Department
2929 Walker Avenue, N.W.
Grand Rapids, MI  49544
(616) 791-3006
Attorneys for Defendants

_____/

Anthony D. Gritz, In Pro Per
600 Cresenzo Court, Apt. D
New Lenox, IL  60451
(815) 485-4705

_____/

## AFFIDAVIT OF WENDE ALIGHIRE

STATE OF MICHIGAN       )
                       ) ss.
COUNTY OF KENT         )

        WENDE ALIGHIRE, deposes and says as follows:

1.      I am competent to make this Affidavit.  If called upon to do so, I can testify to the following facts.

2.      I am employed by Meijer, Inc. ("Meijer") in the position of Corporate Team Relations Representative.  During the times below I was employed in the same position.  My duties in this position included overseeing the implementation and notice to Meijer team members of Meijer's Dispute Resolution Procedure ("DRP") in March 2004.

3.      Anthony Gritz was hired by Meijer on July 18, 1999 as a part-time food clerk in the grocery department at Meijer Store #169 in Bolingbrook, Illinois.  In August 2001, Mr. Gritz became a full time food clerk at Store #169. Mr. Gritz's position remained unchanged until the date of his discharge, effective December 23, 2005.

4.      As a condition of his employment with Meijer, Mr. Gritz accepted the terms set forth in his employment application which included the following arbitration provision:

> If I am hired into or later transferred or promoted to a non-bargaining unit position, **I agree to arbitrate any claim, controversy, dispute or complaint arising out of or relating to the termination of my employment under any company arbitration policy and/or procedure which exists at the time of the termination of my employment and for which I am eligible.** (Employment Application, Tab A).

5.      On July 17, 1999, Mr. Gritz signed the Meijer Company Policies and Procedures Receipt three times.   (Receipt, Tab B).   One signature indicated that Mr. Gritz received the Team Handbook. The receipt explained that the Team Handbook was a general reference for information on the company's policies and procedures. Mr. Gritz also signed the receipt to indicate that he had read and understood all the Meijer guidelines. Lastly, Mr. Gritz signed the receipt to indicate that he read and understood the terms contained in the Company Policies and Procedures Receipt, and that "in consideration of [his] employment, [he] agree[d] to follow the

2

company's policies and procedures, including any amendments to existing policies and procedures and any policies and procedures hereafter adopted."

6.      At the time Mr. Gritz signed the Company Policies and Procedures Receipt, a Peer Review and Arbitration Procedures applied to hourly team members. (Peer Review and Arbitration Procedures, Tab C). The Peer Review and Arbitration Procedure was explained in the Team Handbook that Mr. Gritz received at the time he signed the Company Policies and Procedures Receipt on July 17, 1999. (Team Handbook pp. 44-45, Tab D). This procedure required hourly team members to submit any complaints regarding discipline, discrimination or discharge to a process called "Peer Review".

7.      "Peer Review" referred to a panel comprised of six Meijer team members, three of whom were hourly and three of whom were in leadership at Meijer. The Peer Review panel, after a review of the information presented, issued a recommendation to the parties based upon the governing policies and procedures. (Peer Review and Arbitration Procedure, p. 3, Tab C).

8.      A team member who was unsatisfied with the results of the Peer Review on discrimination or discharge issues was required to appeal that decision to arbitration. (Peer Review and Arbitration Procedure, p. 4, Tab C).

9.      The arbitrator was selected by the team member from a list of five arbitrators selected by the company. The company paid the costs of arbitration. (Peer Review and Arbitration Procedure, pp. 5, 7, Tab C).

10.     The Peer Review and Arbitration Procedure remained in effect until March 22, 2004.

11.     On March 22, 2004, Meijer implemented the Dispute Resolution Procedure. This policy applies to all team members employed at the time of the policy's adoption, except for

officers of the company and team members covered by a collective bargaining agreement. This policy remains in affect today.  (DRP at Tab E).

12.    The DRP provides that:

"[b]y accepting employment with the company and/or **by continuing your employment after the effective date of the DRP**, you and the company mutually agree to be bound by the terms of the DRP and to **resolve all claims defined in the DRP as subject to arbitration through mandatory, final and binding arbitration, instead of through litigation in court**.  That means **arbitration is your sole and exclusive means for resolving such disputes.**

The DRP also provides that it "replaces all other dispute resolution policies or procedures that were in existence prior to the effective date" of the DRP.

13.    The DRP procedure is more favorable to team members than the Peer Review and Arbitration Procedure. For example, the DRP does not require the team member to submit a complaint to Peer Review. Additionally, the DRP arbitrator selection procedure is more neutral than the procedure mandated by the former Peer Review and Arbitration Procedure. Unlike the Peer Review and Arbitration Procedure, the DRP provides the team member with two options in connection with the selection of an arbitrator. The first option is to select an arbitrator from a list of proposed neutral arbitrators selected by Meijer. If the team member finds the arbitrators on the list unacceptable, the team member may proceed with the second option which is to make a joint request to American Arbitration Association ("AAA") for a list of arbitrators from which both parties can choose.  (DRP, Rule 6, Tab E).

14.    Meijer used several different methods to inform its employees of the implementation and application of the DRP.

15.    On March 22, 2004, Lee Lynam, Meijer's Vice President of Human Relations and Corporate Employment, sent an email to all team members announcing the change.  (3/22/04 email, Tab F).  The email was sent to all team members with a company email address, including

all team leaders. The email advised that if the team member continued employment after March 22, 2004, the team member and the Company mutually agreed to be bound by the terms of the DRP and resolve all claims defined in the DRP through mandatory, final, and binding arbitration.

16.    On March 22, 2004, Mr. Lynam also sent an email to all company directors, including all of the retail store directors, instructing them to review the implementation of the DRP with all of their team leaders. He also instructed the store directors to print copies of the DRP and to give them to team members upon request.

17.    The new DRP was also published in the Meijer Policies and Procedures and available on line through the Company's Infonet. In addition, the Company's previous arbitration policy, known as the Peer Review and Arbitration Procedure, was deleted.

18.    In addition, an article was published in Meijer's on-line Company newsletter, "Transformation News," on March 26, 2004 announcing implementation of the DRP. (3/36/04 Article, Tab G). At that time, under the Company's standard procedure, any team member with an e-mail address, including all team leaders, would have received an email describing the topics covered in the Transformation News for that week and inviting them to go on line and read the newsletter.

19.    An announcement about the DRP was also posted at all offices and stores in locations where team members typically congregated, including at all time clocks, on company bulletin boards and in the break rooms. (Announcement, Tab H).

20.    An announcement about the DRP was posted on the Company's Infonet home page, through the Company's internal computer network, with a link to the text of the DRP.

Company news and announcements were routinely posted on this intranet. The Infonet was accessible to all employees from any computer in a store location.

21.     All persons employed as of March 22, 2004 were informed of the implementation of the DRP through these several methods. The announcements and notices about the DRP informed team members that they could either print a copy of the DRP from the Infonet or ask for a copy from their unit's administrative assistant. Current employees were not asked to sign an acknowledgment of receipt of the announcements or the DRP because the Company determined that the methods used were sufficient to make the workforce aware of the DRP's existence and application.

22.     In contrast to many Illinois employers, Meijer provided Mr. Gritz (and other team members) with "just cause" employment.

_____
WENDE ALIGHIRE

Subscribed and sworn to before me
this 28th day of August, 2008.

_____
Notary Public ___ Ottawa ___ County, MI
My Commission Expires: 2-17-11

LaRAE B. STEIGENGA
Notary Public, Ottawa Co., MI
Acting in Kent Co., MI
My Commission Expires Feb. 17, 2011

# TAB A

# MEIJER EMPLOYMENT APPLICATION

**O.D.F.**
**OPERATION DRUG-FREE**
COMMITTED TO A DRUG-FREE WORK AND SHOP FREE ENVIRONMENT

*Our People Make Us Only The Best*    An equal opportunity employer

## PLEASE FILL OUT BOTH SIDES (IN BLACK INK) OF THE APPLICATION COMPLETELY.

At which Meijer location are you seeking employment? List street name: _____

| TODAY'S DATE 7/15/99 | PHONE NUMBER (819)485-4705 | ALTERNATE PHONE NUMBER ( ) | FOR OFFICE USE ONLY | TRACKING NUMBER |
|---|---|---|---|---|

| LAST NAME Gritz | FIRST Anthony | MIDDLE INITIAL D |
|---|---|---|

| STREET ADDRESS 440 Garfield Ave | CITY New Lenox | STATE Il | ZIP CODE 60451 |
|---|---|---|---|

| PREVIOUS ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|

| SOCIAL SECURITY NUMBER 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 | DRIVER'S LICENSE / STATE I.D. NUMBER Upon Interview/Job | STATE THAT ISSUED DRIVER'S LICENSE / I.D. Il |
|---|---|---|

ARE YOU: ☐ 14-15   ☐ 16-17   ☒ 18 OR OLDER    *NOTE: If under 18, proof of age must be provided.*

DO YOU HAVE UNITED STATES CITIZENSHIP OR AUTHORIZATION FROM THE IMMIGRATION & NATURALIZATION SERVICE TO WORK IN THE U.S.? ☒ YES   ☐ NO

*NOTE: If hired, federal law requires that you furnish documentation establishing your identity and eligibility to work in the United States.*

TYPE OF WORK PREFERRED:
1. Food Service    2. Receiving    3. All Others / Sporting goods

| DO YOU WANT FULL-TIME EMPLOYMENT? ☐ YES ☒ NO POSS | WILL YOU ACCEPT PART-TIME? ☒ YES ☐ NO | NUMBER OF HOURS DESIRED PER WEEK: 15-up | RATE OF PAY EXPECTED  PER: ☐ HOUR ☐ WEEK ☐ YEAR |
|---|---|---|---|

| HAVE YOU EVER APPLIED AT MEIJER? ☐ YES ☒ NO | IF YES, WHERE? ☐ STORES ☐ GENERAL OFFICES ☐ DISTRIBUTION CENTERS |
|---|---|
| IF YES, LIST DATES: | LOCATION: |

| WERE YOU PREVIOUSLY EMPLOYED BY MEIJER? ☐ YES ☒ NO | IF YES, WHERE? ☐ STORES ☐ GENERAL OFFICES ☐ DISTRIBUTION CENTERS |
|---|---|
| IF YES, LIST DATES: | LOCATION: |

WHAT OTHER EMPLOYMENT OR "SIDE LINE" BUSINESS DO YOU HAVE?    WOULD YOU WANT TO CONTINUE THIS IF EMPLOYED BY MEIJER? other   ☐ YES   ☐ NO POSS Jobs

HAVE YOU EVER BEEN CONVICTED OF A CRIME? ☐ YES ☒ NO
IF YES, LIST DATES AND DETAILS:

| HOW WERE YOU REFERRED TO MEIJER? | ☒ EMPLOYEE ☒ FRIEND NAME: Donald/Reen | ☐ SCHOOL NAME: | ☐ AGENCY | ☐ AD PAPER: | ☐ OTHER EXPLAIN: |
|---|---|---|---|---|---|

LIST ANY FRIENDS OR RELATIVES WORKING FOR MEIJER:
NAME _____ RELATIONSHIP _____ WORK LOCATION _____ POSITION _____

### EDUCATION / COURSE OF STUDY

| TYPE OF SCHOOL | NAME AND LOCATION OF SCHOOL | DATES | DID YOU GRADUATE? | COURSE OF STUDY / DEGREE RECEIVED |
|---|---|---|---|---|
| High School | Joliet Central Joliet Il | | ☒ YES ☐ NO | Gen |
| Technical, Business, or Other | U.S. Army Trade Quarter Master School Fayetteville NC | From: 87 To: 89 | ☒ YES ☐ NO | Food Service / Ship Recev |
| College or University | Community Fayetteville NC | From: 87 To: 89 | ☒ YES ☐ NO | U.S. Army Job Related Educ. |

### FOR INTERVIEWER'S USE ONLY

| DATE INTERVIEWED | INTERVIEWER | STARTING WAGE DESIRED: $ PER: ☐ HR. ☐ WK. ☐ YR. | POSITION APPLIED FOR: ☐ FT- ☐ MANAGEMENT ☐ PT ☐ HOURLY | DATE AVAILABLE TO START | UNIT/GEOGRAPHIC INTEREST |
|---|---|---|---|---|---|

| APPLICANT TIME AVAILABILITY | DAY | SUNDAY | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY | SATURDAY |
|---|---|---|---|---|---|---|---|---|
| | FROM | | | | | | | |
| | TO | | | | | | | |

☐ JOB REFERENCE   ☒ LP CHECK   ☐ DRUG SCREEN   ☐ PHYSICAL   ☐ LONDON HOUSE   ☐ CREDIT CHECK   ☐ CHANGE OF STATUS   ☐ OTHER
GENERAL / APPLICANT INFORMATION

C/O DATE _____ REFERRED TO: _____ DATE REFERRED _____

PL 3A rev 0998

PL 3A (back)

## EMPLOYMENT HISTORY
LIST BELOW PAST AND PRESENT EMPLOYMENT BEGINNING WITH YOUR MOST RECENT. INCLUDE U.S. MILITARY EXPERIENCE.

| COMPANY Jewel/osco | DATES OF EMPLOYMENT | PAY RATE | POSITION HELD JOB TITLE | REASON FOR LEAVING |
|---|---|---|---|---|
| ADDRESS, CITY, STATE Frankfort IL | From 3/1/99 | To Start 6.70 $ ☐ HR. ☐ WK. ☑ YR. | Deli Clerk/chefs Kitchen | Still there |
| IMMEDIATE SUPERVISOR Carroll Ortega | To Pres / / | Upon Leaving $ ☐ HR. ☐ WK. ☐ YR. | ☐ FULL-TIME ☑ PART-TIME | |
| SUPERVISOR TITLE Asst. Mngr Deli | | | JOB RESPONSIBILITIES self explanatory | |
| WORK TELEPHONE (815) 464-5352 | MAY WE CONTACT THIS EMPLOYER? ☑ YES ☐ NO | | | |

| COMPANY U.P.S | DATES OF EMPLOYMENT | PAY RATE | POSITION HELD JOB TITLE | REASON FOR LEAVING |
|---|---|---|---|---|
| ADDRESS, CITY, STATE Hodgkins IL | From 3/1/99 | To Start 8.50 $ ☑ HR. ☐ WK. ☐ YR. | unload Trucks/ voice packages through a computer terminal. | |
| IMMEDIATE SUPERVISOR David/west | To Pres / / | Upon Leaving $ ☐ HR. ☐ WK. ☐ YR. | ☐ FULL-TIME ☑ PART-TIME | Still there |
| SUPERVISOR TITLE or Carlos primary | | | JOB RESPONSIBILITIES | |
| WORK TELEPHONE ( ) | MAY WE CONTACT THIS EMPLOYER? ☑ YES ☐ NO | | | |

| COMPANY U.S. Army | DATES OF EMPLOYMENT | PAY RATE | POSITION HELD JOB TITLE | REASON FOR LEAVING |
|---|---|---|---|---|
| ADDRESS, CITY, STATE | From 8/27/86 | To Start N/A $ ☐ HR. ☐ WK. ☐ YR. | Food service/ material Handling Specialist/ 3 storage specialist | |
| IMMEDIATE SUPERVISOR | To 10/97 | Upon Leaving $ ☐ HR. ☐ WK. ☐ YR. | ☑ FULL-TIME ☐ PART-TIME | shipping & Receiv duties to include |
| SUPERVISOR TITLE N/A | | | JOB RESPONSIBILITIES Honorable Discharge. | paperwork & comput er windows compa Ability |
| WORK TELEPHONE ( ) | MAY WE CONTACT THIS EMPLOYER? ☐ YES ☐ NO | | | |

ANY PERIODS OF UNEMPLOYMENT? ☐ YES ☐ NO   IF YES, PLEASE EXPLAIN AND GIVE DATES: All inform upon Interview.

Sharp Electronics/ Yuma Tochi Corp for 1 year prior

PLEASE LIST ANY SKILLS, ABILITIES, HOBBIES, TRAINING, ETC. WHICH YOU FEEL MAY BE AN ASSET. (EXAMPLE: BUSINESS MACHINES, VOLUNTEER WORK, ADDITIONAL LANGUAGES, DATA PROCESSING, CLERICAL, ETC.) Computer Windows 95 - up Calculator w.p. Also Forklifts - other mechanical Trucks.

### PLEASE READ THE FOLLOWING AND SIGN BELOW:

I acknowledge that the facts set forth on this application are true and complete. I understand that if employed, any false statement or omission on this application or any attachment shall be sufficient cause for dismissal. I understand that most Meijer facilities and units operate 24 hours/7 days per week and that, if I am employed by Meijer, I may be scheduled to work any time or day of that week, including holidays.

I understand that before I am hired, Meijer may require me to undergo a physical examination (after a conditional job offer) and/or a drug or alcohol test. I agree to take such an examination and/or test. I also understand that if I am hired, Meijer may require me to undergo a drug and/or alcohol test at any time during my employment. I agree to take such a test.

I authorize Meijer to use its personnel or any investigative agency to investigate my employment record, education, criminal conviction record and financial record. I also authorize all my employers and former employers, references, credit reporting agencies/bureaus, educational institutions and any other person(s) contacted by Meijer representatives to provide Meijer with all records and information relevant to my employment application with Meijer. I release all parties who provide such records or information from all liabilities arising from such disclosures; and I waive any rights to notice of such disclosures.

If I am hired into or later transferred or promoted to a non-bargaining unit position, I agree to arbitrate any claim, controversy, dispute or complaint arising out of or relating to the termination of my employment under any company arbitration policy and/or procedure which exists at the time of the termination of my employment and for which I am eligible.

I authorize Meijer to copy this document and agree that such copies with my signature shall have the same legal force and effect as the original document with my signature.

Signature _____   Date _____

**MEIJER, INC. WISHES TO EXPRESS ITS APPRECIATION TO YOU FOR CONSIDERING US AS A POTENTIAL EMPLOYER.**

GENERAL OFFICES
Michigan Address — 2727 Walker Avenue, N.W. • Grand Rapids, MI 49544-1369 • Telephone (616) 453-6711

# TAB B

PL 178A
new1294

## COMPANY POLICIES AND PROCEDURES

THE COMPANY'S WRITTEN POLICIES AND PROCEDURES ARE FOUND IN A NUMBER OF PUBLICATIONS AND DOCUMENTS AND ARE AVAILABLE FOR VIEWING ON-LINE. OTHERS MAY BE UNWRITTEN. YOU WILL BE INFORMED ABOUT THE POLICIES AND PROCEDURES WHICH PERTAIN TO OR AFFECT YOU. IT IS YOUR RESPONSIBILITY TO BE FAMILIAR WITH THOSE POLICIES AND PROCEDURES AND TO FOLLOW THEM.

MANY OF THE COMPANY'S POLICIES AND PROCEDURES ARE PUBLISHED IN A MANUAL ENTITLED **POLICY AND PROCEDURES**. EACH UNIT HAS A COPY OF THIS MANUAL OR THEY CAN BE VIEWED ON-LINE. YOU WILL ALSO BE GIVEN A COPY OF THE MEIJER GUIDELINES WHICH CONTAINS INFORMATION ABOUT SPECIFIC GUIDELINES YOU WILL NEED TO KNOW. THESE PUBLICATIONS ARE AVAILABLE FOR REVIEW THROUGH YOUR FIRST ASSISTANT. THE **TEAM MEMBER HANDBOOK** IS A GENERAL REFERENCE FOR INFORMATION ON COMPANY HISTORY, POLICIES, PROCEDURES, BENEFITS AND MORE. A COPY IS GIVEN TO EACH TEAM MEMBER. MANY OF THE COMPANY'S POLICIES AND PROCEDURES ARE STATED OR SUMMARIZED IN THE HANDBOOK. IT IS YOUR RESPONSIBILITY TO READ THE HANDBOOK AND TO BE FAMILIAR WITH ITS PROVISIONS. IF YOU HAVE ANY QUESTIONS ABOUT ANYTHING CONTAINED IN THE HANDBOOK, TALK TO YOUR FIRST ASSISTANT. OTHER COMPANY POLICIES AND PROCEDURES WHICH MAY BE APPLICABLE TO YOU ARE FOUND IN VARIOUS BENEFIT BOOKS, AND SUMMARY PLAN DESCRIPTIONS. IF APPROPRIATE, COPIES OF THESE DOCUMENTS WILL BE GIVEN TO YOU OR WILL BE MADE AVAILABLE FOR REVIEW UPON REQUEST.

NEW POLICIES AND PROCEDURES MAY BE ADDED AND EXISTING ONES MODIFIED OR DELETED FROM TIME TO TIME. YOU WILL BE INFORMED WHEN SUCH A CHANGE WHICH AFFECTS YOU OCCURS. WRITTEN OR ORAL NOTICE OF CHANGES IN POLICY OR PROCEDURE MAY BE GIVEN TO YOU BY YOUR FIRST ASSISTANT IN DEPARTMENT MEETINGS OR OTHER INFORMATION MEETINGS, THROUGH THE POSTING OR DISTRIBUTION OF WRITTEN NOTICES, OR THROUGH THE ISSUANCE OF NEW MANUALS OR HANDBOOKS. NOTICES MAY ALSO BE POSTED OR DISTRIBUTED FROM TIME TO TIME TO EXPLAIN OR SUPPLEMENT A PARTICULAR POLICY OR PROCEDURE. IT IS YOUR RESPONSIBILITY TO BE AWARE OF AND FOLLOW ANY NEW POLICIES OR PROCEDURES OR ANY CHANGES TO EXISTING ONES.

I HAVE READ AND UNDERSTOOD THE ABOVE. IN CONSIDERATION OF MY EMPLOYMENT I AGREE TO FOLLOW THE COMPANY'S POLICIES AND PROCEDURES, INCLUDING ANY AMENDMENTS TO EXISTING POLICIES AND PROCEDURES AND ANY POLICIES AND PROCEDURES HEREAFTER ADOPTED.

07/17/99   Anthony D Gritz
DATE         TEAM MEMBER

### TEAM HANDBOOK RECEIPT
I ACKNOWLEDGE RECEIPT OF THE TEAM HANDBOOK.

07/17/99   Anthony D. Gritz
DATE         TEAM MEMBER

### RECEIPT
I HAVE READ AND UNDERSTAND ALL OF THE MEIJER GUIDELINES

07/17/99   Anthony D. Gritz
DATE         TEAM MEMBER

# TAB C

# MEIJER PEER REVIEW AND ARBITRATION PROCEDURE
# FOR HOURLY TEAM MEMBERS

## I. GENERAL INFORMATION

### A. PURPOSE AND PHILOSOPHY

Meijer, Inc's philosophy is to treat all team members fairly and with dignity and respect, to encourage open communication and to provide an effective means for team members to bring work-related problems and complaints to the company's attention.

While we hope that your employment relationship will be free from problems or conflicts, we recognize that at times problems may arise even in the best work environment. The company has adopted this procedure to provide a uniform, systematic and prompt method for team members to resolve all work-related complaints.

### B. ELIGIBILITY

You are eligible to use this procedure if you are or were a full-time or part-time hourly team member of Meijer in Indiana or Illinois.

### C. DEFINITIONS

Work-related complaint includes complaints about problems with fellow team members or team leaders, complaints regarding promotion, demotion, discipline, discrimination or discharge and complaints about the interpretation or application of established company policy or procedures.

A discrimination complaint means specifically a complaint that you were discriminated against in violation of applicable federal, state or local civil rights or employment discrimination laws and includes, but is not limited to, complaints of discrimination based on race, sex, sexual harassment, pregnancy, religion, national origin, age, and disability.

A discipline complaint means specifically a complaint that you were disciplined unfairly, without just cause or for reasons which violate applicable public policy or applicable federal, state or local laws.

A discharge complaint means specifically a complaint that you were discharged from employment without just cause or for reasons, which violate applicable public policy or applicable federal, state or local laws.

Discharge from employment means you were involuntarily and permanently separated from employment by the company and includes a constructive discharge. Constructive discharge means the company deliberately made your working conditions so difficult or unpleasant that you felt you had no other alternative but to resign or quit.

## D. TIME LIMITS

The time limits specified in this procedure are important. You must follow them unless you get a written agreement from the company extending the time limits.

If you do not meet the time limits, or any extensions, which are granted, you will be bound by the company's decision on your case. If the company does not meet the time limits, you may immediately proceed to the next step of the procedure.

When the term "day" or "days" is used in this procedure it means calendar days.

## E. OPEN DOOR POLICY

The Open Door Policy means that you can openly discuss work-related complaints with any team leader without fear of reprisal. We encourage you to first discuss your complaint with your first assistant. If it is not satisfactorily resolved, discuss your complaint with your lines area team leader and then with your unit director, if necessary.

If you are uncomfortable discussing your complaint with your unit team leaders or if your complaint is one that cannot be solved by your unit team leaders, you may contact the Team Relations Department for assistance. Please consult your Meijer telephone directory for the extension, or, call toll free 1-800-346-8281 from any non-Meijer location and ask for Team Relations.

Although there is no time limit on using the Open Door Policy, you should give prompt notice of any complaints. This is extremely important to enable your team leaders to conduct any necessary review and to try to resolve your complaint quickly and fairly. Therefore, we strongly encourage you to report any complaints as soon as possible after they arise.

You should try to solve your complaint by using the company's Open Door Policy before using the steps of the Peer Review and Arbitration Procedure set forth below. If you have been discharged, however, you may begin with Peer Review.

# II. PROCEDURE

## A. PEER REVIEW

If you have completed your mutual evaluation period and if your complaint involves discipline, discrimination or discharge, you may use peer review if you have not been able to resolve your complaint to your satisfaction by using the Open Door Policy.

The Peer Review Panel

Peer review means you will be able to present your case to a panel of six team members consisting of three hourly team members, two team leaders and the Director of Team Relations (or a designee). The Director of Team Relations will serve only as a nonvoting moderator of the panel. The other five members will each have one vote. You will be able to pick all five voting members of the peer review panel from a list of qualified team members and team leader volunteers at your unit.

Request for Review

To request a review of your case with a peer review panel, you must submit a Peer Review Request Form to your unit director no later than thirty (30) calendar days after your complaint arose. In cases of discipline or discharge, this means no later than thirty days after you received notice of the discipline or discharge. Remember, during that time you must first try to resolve your complaint by using the Open Door Policy, except in cases of discharge. After the company receives your Peer Review Request Form, you will be contacted to arrange a mutually agreeable time for the peer review to take place.

The Review

When you meet with the peer review panel, you will have an opportunity to explain your position to the panel and to present other relevant evidence, such as witnesses and documents. Your unit director (or designee) will explain the company's position and present any evidence for the company. Neither you nor the company will be allowed to have an attorney or other third-party representative at the peer review. You may, however, ask another team member or team leader to be present to assist you at the peer review.

You must attend the peer review on the date it is scheduled unless you have good cause not to do so. If you have good cause, you must give reasonable notice to your unit director that you will be unable to attend. In that case, the peer review will be rescheduled. If you fail to appear and fail to give reasonable notice, you will be considered to have abandoned the peer review and arbitration procedure. The peer review will not be held or rescheduled and you will be bound by the company's decision on your case.

Confidentiality

All information presented or discussed at the peer review is strictly confidential and may not be discussed outside the peer review. Anyone who violates this confidentiality rule will be subject to disciplinary action, up to and including termination.

The Panel's Recommendation

After the review is completed, the panel will go into closed session to discuss the case and to make a recommendation to the parties. In making its recommendation, the panel may not change company policy or procedures.

The panel will decide on its recommendation by majority vote conducted by secret ballot. The panel will record its recommendation on a Peer Review Form and give you and the company a copy. The panel will not reveal the vote totals to you-only the majority recommendation.

In cases involving discipline, the recommendation of the peer review panel is final and binding on both you and the company and there is no further appeal.

In cases involving discrimination or discharge, if both you and the company accept the recommendation of the peer review panel, the panel's recommendation is final and binding on both parties and there is no further appeal. If, however, either party does not accept the panel's recommendation, that party may appeal to arbitration by following the procedure set forth below. The arbitrator's decision is final and binding on both you and the company, thus precluding litigation in any other forum.

The peer review panel's recommendation to the parties is not admissible in any subsequent arbitration hearing.

B. ARBITRATION

Arbitration is a process similar to a court proceeding except that the final decision is made by a neutral arbitrator instead of a judge or jury. At our company, you must use arbitration if you want to contest the recommendation of the peer review panel.

Election To Arbitrate

Either party may elect arbitration by notifying the other party in writing of an intent to do so. The notice must be postmarked no later than fourteen (14) calendar days after the date the party received the panel's recommendation. Failure to provide this notice within the fourteen (14) days will be considered an acceptance of the Peer Review Panel's decision.

If you elect to arbitrate your case, you must send your written notice to:

Director of Team Relations
Meijer, Inc.
535 1 Pike Plaza Road
Indianapolis, IN 46254

Selection Of The Arbitrator

If either party elects arbitration, the company will promptly mail to you a list of names of five (5) arbitrators. The list will be comprised of arbitrators who: (1) are not employed by or affiliated with the company or any parent or subsidiary; (2) are attorneys; (3) are generally recognized as neutral labor and employment arbitrators; and (4) are affiliated with or registered with the Federal Mediation and Conciliation Service (FMCS) and/or the American Arbitration Association (AAA).

No later than fourteen (14)calendar days after you receive the list of arbitrators, you or your representative must meet or confer at a mutually convenient place and time with the company" s designated representative to choose an arbitrator from the list.

The arbitrator will be chosen from the names on the list by alternately striking names until only one name remains. You will strike the first name.

Representation

Either party may be represented by an attorney or other representation at the arbitration hearing. However, the company will not be liable for the payment of expenses or fees charged to you by any attorney, other representative or witness, except as may be appropriately awarded by the arbitrator under applicable law.

Discovery

After the arbitrator is selected, you and the company should attempt to agree on any prehearing discovery. If agreement cannot be reached, the arbitrator may authorize discovery consistent with both the need to provide a full and fair consideration of the relevant and material facts of the case and the need to provide a relatively inexpensive and expeditious method to resolve the parties' dispute.

Rules Governing The Arbitration Hearing

The arbitration will be conducted in accordance with the then-current provisions of the Voluntary Labor Arbitration Rules of the American Arbitration Association, except as modified by this procedure and except that the American Arbitration Association shall not administer the arbitration.

At the end of the hearing, both you and the company will have the opportunity to file post-hearing briefs. The time for filing the brief will be set by the arbitrator.

Either party may, at the party's own expense, arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings.

## Arbitrator's Authority

The arbitrator's authority is limited to deciding discrimination and discharge complaints.

In reaching a decision, the arbitrator shall interpret, apply and be bound by any applicable company handbooks, rules, policies and procedures and by applicable federal, state or local law. The arbitrator shall have no authority, however, to add to, detract from, change, amend or notify any law, handbook, rule, policy or procedure in any respect. Nor shall the arbitrator have any authority to substitute his or her judgment for the company's business judgment.

The arbitrator shall have the authority to hear and rule on pre-hearing disputes and to hold pre-hearing conferences by telephone or in person, as the arbitrator deems necessary. The arbitrator shall also have the authority to entertain a motion to dismiss and/or a motion for summary judgement or disposition by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

## Relief

The arbitrator may grant any remedy or relief that a court of competent jurisdiction could grant, subject to the following: (1)the arbitrator shall not award relief greater than that sought by the team member; (2)the arbitrator may not reduce any penalty imposed by the company of the arbitrator finds the team member was disciplined or terminated in accordance with company policy and not for an unlawful reason; and (3)if the arbitrator awards back pay, the arbitrator shall deduct from the award all lawful setoffs, including but not limited to, the team member's interim earnings, unemployment compensation payments, any other sums paid in lieu of employment during the period after discharge and any amount attributable to the team member's failure to mitigate damages or for periods of unavailability for work.

In cases of discharge from employment, if the arbitrator orders reinstatement the company shall have the option, within fourteen (14)calendar days of receipt of the award, to request that the arbitrator make a monetary award in lieu of reinstatement. If the company makes such a request, the arbitrator shall make a monetary award which the company, at its discretion, may pay in lieu of reinstatement. The arbitration hearing shall be reopened for additional proofs on this issue if either party so requests.

## Form Of Arbitrator's Award

The arbitrator shall submit to the parties a written award signed by the arbitrator. The award shall specify the relief awarded, if any, and the elements and basis for any monetary award. The award shall be accompanied by a written opinion signed by the arbitrator, which shall include findings of fact and, where appropriate, conclusions of
law.

Arbitrator's Fees

The arbitrator's fees and expenses shall be borne fully by the company, except that fees incurred as a result of any postponement shall be borne by the party requesting or causing the postponement of the hearing.

## III. EXCLUSIVE REMEDY, EFFECT OF ARBITRATION, CONDITION PRECEDENT

The Peer Review and Arbitration Procedure is intended to be the sole and exclusive remedy and forum for all complaints within its scope. The use of the term "may" with respect to advancing a complaint from one step to another is not intended to mean or imply that this procedure or its various steps are optional.

All decisions made under this procedure, including arbitration decisions, are final and binding between the parties as to all complaints, which were or could have been advanced to the step at which the decision was made. Judgment may be entered on any arbitration award by any court of competent jurisdiction.

In the event a court of competent jurisdiction should determine that this procedure is not the sole and exclusive remedy and forum and/or that the decision and award of the arbitrator, if any, is not final and binding between the parties as to some or all of the team member's complaints, it is intended that exhaustion of this procedure be a condition precedent to the institution or maintenance of any legal, equitable, administrative, or other formal proceeding by an eligible team member for all complaints within the scope of this procedure.

## IV. SEVERABILITY

If any provision of this procedure is adjudged to be void or otherwise unenforceable, in whole or in part, it is intended that such adjudication shall not affect the validity of the remainder of the procedure.

## V. SOLE PROCEDURE

This procedure is the only procedure Meijer has for the resolution of complaints within its scope. No one is authorized to make any oral representations contrary or in addition to the provisions of this procedure, except the President of the company.

## vl. RIGHT TO MODIFY OR TERMINATE

Meijer reserves the right to modify or terminate this procedure at any time.

# TAB D



# MEIJER

# TEAM HANDBOOK

**FOR INDIANA, ILLINOIS
AND TRAVERSE CITY
TEAM MEMBERS**



# MEIJER

September 1996 * PI-1981/IF

## Systems to Support Fair Treatment

We believe in strengthening the job security of each team member by being both a successful company and a "just cause" employer. Many employers have an "at will" employment relationship with their employees which allows them to release them from employment for no specific reason. This is not consistent with Meijer's belief in fair treatment.

At Meijer we believe there is a direct relationship which exists between team members' satisfaction with their job and their ability to perform their job to the best of their ability. Conflict and concerns will arise from time to time even in the best of work environments. The majority of concerns can usually be resolved through honest, open communication with the team leader.

### 1. Peer Review System

We also recognize there may, unfortunately, be some cases such as disciplinary situations, termination of a team member's employment or feelings of discrimination where the team leader may not be able to resolve the concern to the satisfaction of the team member.

To facilitate an impartial review of these types of concerns, we have developed a Peer Review System. This system will allow an unbiased, impartial panel comprised of fellow team members and team leaders to listen to any team member's concerns regarding discipline, discrimination or termination of employment. This review is available to any hourly team member who has completed his/her mutual evaluation period with the company.

### 2. Arbitration

In cases of claims of discrimination or termination of

employment, should a team member not be satisfied with the results of his or her peer review, he/she may elect to appeal that decision to arbitration by an impartial arbitrator. The company will pay the costs of the arbitration if you elect to arbitrate your case. You may choose to have an attorney represent you at the arbitration. However, your attorney's fees are your responsibility.

The Open Door policy, Meijer Exchange Letter and the Team LEAD Assessment help ensure we have open, honest communication and feedback with our team members.

A Peer Review Process, establishing "just cause" employment and offering an independent arbitration procedure, demonstrates our strong commitment to fair treatment.

### Termination Appeal Procedure

The Termination Appeal Procedure is available to any salaried team member/team leader who has completed his/her mutual evaluation period.

The procedure has been established as a means to resolve all complaints about termination from employment. It is intended to ensure that no person is terminated from employment without just cause or is terminated for a discriminatory or other unlawful reason.

The first step in the appeal procedure is a review by the Human Resource Communications/Services Department of the decision to terminate. If you feel your employment is terminated without just cause or for a discriminatory or other unlawful reason, you must submit a written request for review to the Human Resource Communications/Services Department within 14 days of your termination on a form supplied by the company. The form is available from your unit director or the Human Resource Communications/Services Department. After you submit the request, the Human Resource Communications/

# TAB E

# Dispute Resolution

| Policy No: 0090 | Revision: 1 | Effective: 03/22/04<br>Last Review: 08/2007 |
|---|---|---|

## Purpose

Meijer values its team members. Treating people with dignity and respect is a cornerstone of the Meijer culture. While we hope that your employment relationship will be free from problems, we realize that at times conflicts and disputes may arise even in the best work environment. We believe that it is important to resolve those conflicts and disputes as fairly and quickly as possible. That is why we have adopted the Meijer Team Member Dispute Resolution Procedure ("DRP").

The DRP is intended to provide a way to resolve disputes and claims fairly, impartially, efficiently, economically and privately. It is also intended to be an exclusive, mandatory, final and binding method of resolving such disputes.

The DRP has a variety of methods to air and resolve almost every kind of workplace problem – from minor, everyday misunderstandings to claimed violations of legally protected rights. The DRP includes dispute resolution methods that range from informal, internal ways to resolve disputes to more formal external methods. The DRP includes several voluntary methods as well as mandatory, final and binding arbitration. It also includes a set of rules for arbitration.

## Scope

The DRP generally applies to all full-time and regular part-time team members* in the company, except for officers of the Company. As noted below, however, some of the voluntary methods to resolve disputes are only available to certain classifications of team members. In addition, the DRP does not apply to team members who are covered by any collective bargaining agreement, except to the extent permitted in the applicable collective bargaining agreement or lawfully imposed by the company when no collective bargaining agreement is in effect.

(* The phrase "team member" is used in this document to refer to all Meijer employees, including team leaders and other supervisors and managers.)

The DRP does not limit or restrict in any way your legal right to file claims or charges with federal administrative agencies, such as the National Labor Relations Board ("NLRB") or the Equal Employment Opportunity Commission ("EEOC"), or other similar state or local administrative agencies.

## General

The effective date of the DRP is March 22, 2004. The DRP replaces all other dispute

resolution policies or procedures that were in existence prior to the effective date.

By accepting employment with the company and/or by continuing your employment after the effective date of the DRP, you and the company mutually agree to be bound by the terms of the DRP and to resolve all claims defined in the DRP as subject to arbitration through mandatory, final and binding arbitration, instead of through litigation in court. That means arbitration is your sole and exclusive means for resolving such disputes.

Because circumstances change, the company may amend the DRP, including the Arbitration Rules, from time to time by giving thirty calendar days' notice to team members. Of course, any amendments will not apply to any claims that arose prior to the date of the amendment. By continuing your employment after receiving notice of any amendments, you and the company mutually agree to be bound by those amendments. The company may also terminate the DRP at any time by giving thirty calendar days' notice to team members. Again, the termination of the Procedure shall not apply to any claims that arose prior to the date of termination.

## NO RETALIATION POLICY

The only way the DRP can be truly effective is if team members can use it with confidence. Therefore, no team member will be subject to any form of discipline or retaliation for initiating or participating in good faith in any process or proceeding under the DRP. Any team member who retaliates against another team member for using the DRP will be subject to discipline, up to and including discharge.

## Responsibilities and Procedures

### THE VOLUNTARY METHODS TO RESOLVE CLAIMS AND DISPUTES

A variety of different voluntary methods to resolve disputes are listed below. We encourage you to use these methods as soon as you have a problem or dispute. Remember, the sooner you bring a problem to leadership's attention, the easier it usually is to resolve. We encourage you to use the Open Door Policy before using any of the other methods to resolve disputes in the DRP because it is usually fast and often resolves the problem. If you are unable to resolve your problem through the Open Door Policy, we suggest that you next discuss it with a Human Resources Representative. If that representative cannot help resolve your problem, he or she may discuss other appropriate voluntary methods with you, such as peer review, termination review or non-binding mediation.

If at any time you have questions about any of these voluntary methods to resolve disputes please call the Human Resources Representative for your unit. This information is available on the InfoNet or your unit director or the unit administrative assistant will be able to tell you who that is.

### THE OPEN DOOR POLICY

*Who can use it?* All team members can use the Open Door Policy.

*Which disputes are covered?* The Open Door Policy can be used to try to resolve any workplace problem or claim.

*How does it work?* The company's longstanding Open Door Policy guarantees that all doors are open to you within the company to discuss and to try to resolve any work place problems without fear of retaliation or reprisal. We encourage you to first discuss any problems with your first assistant. Because this person is close to your situation, he or she may already be aware of the problem, or may be in a position to offer a new perspective or new facts that may be helpful to resolve the problem. If your first assistant is part of the problem, or if for any reason you are uncomfortable reviewing the problem with him or her, you may take the problem to the next higher level of leadership, or any level of leadership as needed to solve the problem.

*Is there a time limit?* No, there is no time limit to use the Open Door Policy. However, we encourage you to bring any problems to leadership's attention as soon as possible. This is important to enable leadership to conduct any necessary review and to try to resolve the problem quickly and fairly. Often, the longer you wait the more difficult it becomes to resolve the problem.

*Is there a cost?* No, there is no cost to you to use the Open Door Policy.

## REVIEW BY A HUMAN RESOURCES REPRESENTATIVE

*Who can use it?* All team members covered by the DRP can request a review by a Human Resources Representative.

*Which disputes are covered?* Review by a Human Resources Representative can be used to try to resolve any workplace problem or claim.

*How does it work?* A Human Resources Representative will talk to you about the problem, either by telephone or in person, and will try to help you find a solution. Depending on the situation, the representative may investigate the facts and recommend a solution to you and the company or may recommend that you use or re-try the Open Door Policy or one of the other voluntary options, such as peer review or mediation, if applicable.

*How do I request it?* If you work in a retail unit, you should contact your Regional Human Resources Representative. If you work in distribution, manufacturing or a corporate office, you should contact your Corporate Team Relations Representative. The telephone numbers for these representatives are available online on the InfoNet or in the printed directory or may be obtained from your unit director.

*Is there a time limit?* No, there is no time limit on requesting a review by a Human Resources Representative. However, we encourage you to bring any problems forward as soon as possible. This is important to enable the representative to conduct any necessary review and to try to resolve the problem quickly and fairly. Often, the longer you wait the more difficult it becomes to resolve the problem.

*Is there a cost?* No, there is no cost to you to request a review by a Human Resources Representative.

## PEER REVIEW

*Who can use it?* You can request a Peer Review if you have completed your probationary/mutual evaluation period and you are an hourly team member at Store 33 in Traverse City, Michigan, an hourly team member in Illinois or an hourly team member in Indiana (except Stores 167 and also 220).

*Which disputes are covered?* Peer Review can be used to try to resolve any claim or dispute involving discipline, discrimination or discharge.

*How does it work?* Peer Review is a review of your claim or dispute by a panel of team members consisting of three hourly team members, two team leaders and a Human Resources Representative. The Human Resources Representative serves only as a non-voting moderator of the panel. The other five members each have one vote. (After you request a Peer Review, the company will contact you to select a peer review panel and to arrange a mutually agreeable time for the peer review to take place.) You will be able to pick all five voting members of the peer review panel from a list of qualified volunteers at your unit.

When you meet with the peer review panel, you will have an opportunity to explain your position to the panel and to present other relevant information and evidence, such as witnesses and documents. Your unit director (or designee) will explain the company's position and present any information or evidence for the company. Neither you nor the company will be allowed to have an attorney or other third-party representative at the peer review. You may, however, ask another team member or team leader to be present to assist you at the peer review.

After the peer review hearing is completed, the panel will go into closed session to discuss the case and to make a recommendation. The panel will decide on its recommendation by a majority vote conducted by secret ballot. In making its recommendation, the panel may not change company policy or procedures. The panel will record its recommendation on a Peer Review Form and give you and the company a copy. The panel will not reveal the vote totals to you - only the majority recommendation.

In cases involving discipline, the recommendation of the peer review panel is final and binding on both you and the company and there is no further appeal. In cases involving discrimination or discharge the panel's recommendation is advisory only. However, if both you and the company agree in writing to accept the recommendation of the peer review panel, the panel's recommendation becomes final and binding on both parties.

All information presented or discussed at the peer review hearing is strictly confidential and may not be discussed outside the hearing, except with your legal counsel or other representative and with appropriate administrative agencies. Anyone who violates this confidentiality rule will be subject to disciplinary action, up to and including termination. The peer review panel's recommendation to the parties is not admissible in any subsequent arbitration hearing.

*How do I request it?* You should submit a Peer Review Request Form to your unit director. These forms are available from your unit director or unit administrative

assistant.

*Is there a time limit?* You are guaranteed a peer review hearing if you request a Peer Review no later than 30 calendar days after your complaint arose. In cases of discipline or discharge, this means no later than 30 calendar days after you received notice of the discipline or discharge. If you request a Peer Review more than 30 calendar days after your complaint arose, the company may agree to provide a peer review hearing, but will not guarantee it.

*Is there a cost?* No, there is no cost to you to use Peer Review.

## TERMINATION REVIEW

*Who can use it?* Any Office, Management or Professional (OMP) team member who has completed the applicable probationary period can request a Termination Review.

*Which disputes are covered?* The Termination Review option is only for complaints involving termination of employment.

*How does it work?* You can ask the company to designate a Human Resources Representative who was not involved in the decision to terminate your employment to review the company's decision. The representative will investigate and review the circumstance surrounding the termination. After conducting this review, they will present their findings to the Termination Review Board. The Board has the authority to uphold, reverse or otherwise modify the termination decision. After the decision by the Board, the representative will share with you the results of his or her investigation and the decision. This could include a decision to reinstate you with or without back pay, to reduce the discharge to discipline, to uphold the original decision or to offer a settlement.

*How do I request it?* You should mail a written request for a Termination Review to the following address: Administrator of Dispute Resolution Services, Meijer Human Resources Department, 2929 Walker NW, Grand Rapids, MI 49544. The written request should include your name, address, telephone number, social security or employee id number, unit where you worked and a short statement of your claim or claims.

*Is there a time limit?* You are guaranteed a Termination Review if you request a Termination Review no later than 30 calendar days after you received notice of your termination. If you submit your appeal more than 30 calendar days after your termination, the company may agree to conduct a review, but will not guarantee it.

*Is there a cost?* No, there is no cost to you to use the Termination Review option.

## NON-BINDING MEDIATION

*Who can use it?* All team members covered by the DRP can request non-binding mediation. However, it can only be used if both you and the company agree in writing to do so.

*Which disputes are covered?* Mediation can be used for any dispute; however, it is generally used only for disputes based on legally protected rights, such as discrimination and discharge claims.

*How does it work?* Mediation is a meeting at which you and company representatives discuss the dispute with a neutral person from outside the company, called a mediator. Mediation is often highly successful at resolving disputes. It provides the opportunity for both sides to tell their story to a neutral third party and to each other; it helps reduce feelings of hostility; it helps to separate emotional issues from factual issues; it promotes discussion of creative solutions; it helps people work things out for themselves; and, it offers an opportunity for solutions that are good for both the team member and the company.

Mediation is non-binding. This means that the mediator will help the parties to reach a settlement and can make recommendations to the parties, but cannot force a settlement. However, if the parties reach an agreement, the terms of the agreement will be put in writing to be signed by the parties. The signed agreement is final and binding on the parties.

*How do I request it?* If you work in a retail unit, you should contact your Regional Human Resources Representative to request mediation. If you work in distribution, manufacturing or a corporate office, you should contact your Corporate Team Relations Representative. The telephone numbers for these representatives are available online on the InfoNet or in the printed directory or may be obtained from your unit director.

*Is there a time limit?* No, there is no time limit on when you or the company can request mediation.

*Is there a cost?* No, there is no cost to you to use non-binding mediation. The company will pay the full cost of mediation, unless the parties agree otherwise.

## MANDATORY ARBITRATION

### FINAL AND BINDING ARBITRATION BY A NEUTRAL ARBITRATOR

*Who must use it?* Mandatory arbitration applies to all team members except officers of the Company and team members covered by a collective bargaining agreement, unless the collective bargaining agreement provides for arbitration under the DRP.

*Which disputes are covered?* Generally, you must submit claims involving legally protected rights arising out of or related to your employment and/or separation from employment to final and binding arbitration. Arbitration Rule 1 defines those claims that are subject to mandatory arbitration and Arbitration Rule 2 defines those claims that are not subject to mandatory arbitration.

*How does it work?* Arbitration is a private dispute resolution process in which a dispute is presented to a neutral third party, called an arbitrator, for a decision that is final and binding on both parties. The arbitrator makes this final and binding decision after both sides present their witnesses, evidence and arguments at an arbitration hearing. Although arbitration is less formal than a court trial, it is an orderly proceeding governed

by rules of procedure and legal standards of conduct. The Arbitration Rules set forth below will govern any arbitration pursuant to the DRP.

Litigation of disputes in court often takes years and is often very time consuming, costly and frustrating for both parties. Arbitration is a fair, cost-effective and expeditious means of resolving such disputes. With arbitration, disputes are usually resolved in months, rather than years.

*Is there a cost?* Although the company generally pays for all of the costs of arbitration, you may have some costs. For example, you will have to pay a modest filing fee. In addition you will have to pay the fees for any representative or expert, unless the arbitrator orders otherwise in accordance with applicable law. All of the costs and fees associated with arbitration are set forth in Rule 26 of the Arbitration Rules below.

## ARBITRATION RULES

### Rule 1.   Claims Subject To Arbitration

Except as otherwise limited in these Arbitration Rules, all claims that arise out of or relate to the team member's employment and/or separation from employment with Meijer and that concern legally protected rights for which a court would be authorized by law to grant relief are subject to arbitration.

Claims subject to arbitration include claims for violation of any federal, state or local constitution, statute, ordinance, regulation or rule pertaining to employment and claims of violation of the common law.

Examples of specific claims subject to arbitration include, but are not limited to, the following:

1.   claims for unpaid wages or other compensation;

2.   claims of wrongful or unjust discharge, including claims of constructive discharge;

3.   claims for breach of express or implied contract;

4.   claims for violation of public policy;

5.   employment-related tort claims, such as claims for intentional/negligent infliction of emotional distress, defamation, malicious prosecution, and wrongful arrest/wrongful imprisonment;

6.   claims of unlawful retaliation; and,

7.   claims of employment discrimination, harassment or failure to accommodate, including, but not limited to, claims based on race, sex, age, national origin, religion, physical or mental disability and marital status.

Further examples of specific statutory claims subject to arbitration include, but are not

limited to, claims arising under the following statutes: the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC § 1981, the Americans with Disabilities Act ("ADA"), the Fair Labor Standards Act ("FLSA"), the Employee Polygraph Protection Act ("EPPA") and the Family Medical Leave Act ("FMLA").

### Rule 2.  Claims Not Subject To Arbitration

The following claims and disputes are not subject to arbitration:

1.  claims for workers' compensation and unemployment compensation, except claims of unlawful retaliation or discrimination for filing such claims are subject to arbitration;

2.  claims based on an employee pension or other employee welfare benefit plans;

3.  claims by Meijer for injunctive relief and/or other equitable relief for unfair competition and/or the unauthorized disclosure of trade secrets or confidential information or for unfair labor practices, such as picketing and strikes;

4.  claims about the content, establishment or amendment of Meijer policies, procedures or practices;

5.  claims about the manner in which Meijer decides to organize its businesses, wage rates or salary structure, job content or description;

6.  claims about the company's decision as to the necessity for or the magnitude of a reorganization or reduction of the workforce; and,

7.  all other claims that do not concern legally protected rights for which a court would be authorized by law to grant relief.

### Rule 3.  Procedure to Initiate Arbitration

A party shall initiate arbitration by serving a written notice of the intent to arbitrate on the other party within the time limits set forth below.

The written notice should include the party's name, address, telephone number, social security or employee id number, unit where the employee works or worked and a short statement of the claim or claims.

If the team member elects arbitration, he or she must deliver or mail the written notice addressed as follows: Administrator of Dispute Resolution Services, Meijer Human Resources Department, 2929 Walker NW, Grand Rapids, MI 49544.

If the company elects arbitration it must give written notice to the team member at the team member's last known address.

### Rule 4.  Time Limit to Initiate Arbitration

Written notice of the intent to arbitrate must be delivered to the other party or must be postmarked no later than six months from the date on which the claim arose, or in the case of a claimed violation of a statute, within the applicable statutory limitations period, whichever is longer. The failure to give written notice of intent to arbitrate within the applicable time period shall, to the greatest extent permitted by law, constitute a waiver and release with respect to the dispute and shall forever bar any claim involving that dispute.

### Rule 5.  Number of Arbitrators

The dispute shall be heard and decided by one arbitrator.

### Rule 6.  Selection of the Arbitrator

Upon initiation of arbitration by either party, the company may, at its option, promptly deliver or mail a list of proposed neutral arbitrators to the team member. The arbitrators on the list will meet all of the qualifications set forth in these rules.

If the team member finds the list acceptable, the team member must promptly notify the company in writing of that fact. The parties will then confer in person or by telephone at a mutually agreeable time and choose an arbitrator from the list by alternately striking names, the team member striking first, until only one name remains. If the arbitrator chosen in this manner cannot serve for any reason, the last arbitrator stricken on the list shall be designated to hear the case.

If, for any reason, the team member does not want to choose the arbitrator from the list sent by the company, the team member shall promptly notify the company in writing of that fact. The parties shall then make a joint request to the American Arbitration Association (AAA) to provide them with a panel of at least seven arbitrators from its Employment Dispute Resolution Roster for the region where the dispute arose. Upon receipt of that list, the parties will confer at a mutually agreeable time in person or by telephone and choose an arbitrator from the list by alternately striking names, the team member striking first, until only one name remains. If the arbitrator chosen in this manner cannot serve for any reason, the last arbitrator stricken on the list shall be designated to hear the case.

If the parties choose the arbitrator through AAA, it shall be authorized to administer the arbitration. These Arbitration Rules, however, shall govern the arbitration and all proceedings related to it.

Each party shall be responsible for the timely payment of any filing and/or other administrative fees assessed by AAA against the party.

### Rule 7.   Qualifications of the Arbitrator

The arbitrator shall be experienced in the field of employment law, shall be an attorney, shall not be employed by or affiliated with Meijer or any related or affiliated company or entity, shall have no personal or financial interest in the results of the proceedings and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias. Prior to accepting appointment, the prospective

arbitrator shall disclose all information that might be relevant to the standards of neutrality set forth in this section or that may prevent a prompt hearing.

## Rule 8.  Representation

Any party shall have the right to be represented by an attorney or other authorized representative.

## Rule 9.  Communication with the Arbitrator

There shall be no ex parte (one-sided) communication with the arbitrator on any matter of substance or procedure, except for matters pertaining to the scheduling of a hearing date, unless the parties and the arbitrator agree to the contrary in advance of the communication.

## Rule 10.  Conference with the Arbitrator

The arbitrator may hold a conference at any time during the proceedings at the request of either party or on the initiative of the arbitrator for the discussion and determination of any matter of substance or procedure that will expedite the proceedings.

## Rule 11.  Date, Time and Location of Arbitration

The arbitrator shall have the authority to set the date and time of the arbitration in consultation with the parties. The arbitration hearing will be held as close as practical to the unit where the team member last worked, unless the parties agree otherwise. The arbitrator shall have the authority to resolve all disputes regarding the date, time and location of the arbitration.

## Rule 12.  Postponements

The arbitrator may postpone any hearing upon the request of a party for good cause and must postpone any hearing upon the mutual agreement of the parties.

## Rule 13.  Pre-hearing Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration. In ruling on discovery disputes the arbitrator shall be guided by the Federal Rules of Civil Procedure.

## Rule 14.  Witnesses and Attendance at Hearings

Witnesses shall testify under oath. Witnesses for each party shall submit to direct and cross examination as approved by the arbitrator. The arbitrator shall have the authority to sequester witnesses, other than a party, during the testimony of any other witness. The arbitrator also shall have the authority to decide whether any person who is not a witness may, for good cause, attend the hearing.

## Rule 15.  Evidence/Subpoenas

The parties may offer such evidence as is relevant and material to the dispute and shall produce all non-privileged evidence as the arbitrator deems necessary to an understanding and determination of the dispute.  The arbitrator may receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as the arbitrator deems it entitled after consideration of any objection made to its admission. The parties may agree or the arbitrator may direct that documents or other evidence may be submitted to the arbitrator after the hearing.  All parties shall be afforded an

opportunity to examine such documents or other evidence and to lodge appropriate objections, if any.

The arbitrator shall be the judge of the relevancy, materiality and admissibility of the evidence offered. Conformity to legal rules of evidence shall not be necessary, but the arbitrator shall be guided by the Federal Rules of Evidence. However, applicable federal law with respect to privilege, including the attorney-client privilege, work product and compromise and offers to compromise shall be followed.

The arbitrator may subpoena witnesses or documents upon the request of any party.

## Rule 16.    Order of Proceedings / Burden of Proof

The arbitrator shall have the authority to determine the order and manner of the proceedings and shall exercise that authority to afford a full and equal opportunity to all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute.

The parties shall bear the same burdens of proof and burdens of producing evidence as would apply if their claims and counterclaims had been brought in court.

## Rule 17.    Record of Proceedings

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other party of those arrangements at least three days in advance of the hearing. The requesting party shall pay the cost of the record. If the other party wants a copy of the record, that party shall pay the cost of the copy. If the transcript is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other party for inspection at a date, time and place determined by the arbitrator.

## Rule 18.    Confidentiality

All aspects of any arbitration pursuant to these rules, including the hearing and record of the proceeding, shall be confidential and shall not be open to the public unless the parties agree otherwise in writing or the law provides to the contrary. The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality.

## Rule 19.    Arbitration in Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be based solely on the default of a party. The arbitrator shall require the party who is in attendance to present such evidence as the arbitrator may require for the making of an award.

## Rule 20.    Motions To Dismiss and/or For Summary Disposition

The arbitrator shall have the authority to consider and to decide motions to dismiss and/or motions for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

## Rule 21.    Post-Hearing Briefs

Each party shall have the opportunity to submit one post-hearing brief, which is a written statement of facts and law in support of its position, unless the parties agree otherwise. The arbitrator shall have the authority to set the time period for submission of post-hearing briefs in consultation with the parties.

**Rule 22.    Closing and Reopening of Hearing**

When the arbitrator is satisfied the record is complete, including the submission of post-hearing briefs and any post-hearing documents or other evidence allowed by the arbitrator, the arbitrator shall declare the hearing is closed.

The arbitrator may reopen the hearing upon the arbitrator's initiative or upon application of a party for cause shown at any time before the award is made.

**Rule 23.    Arbitrator's Authority / Applicable Law**

The arbitrator shall have the authority to consider and decide disputes subject to arbitration as defined in these rules.  The arbitrator shall also have the authority to interpret and apply these rules, determine the scope of these rules and to decide issues of arbitrability.

The arbitrator shall not have the authority to consolidate the claims of other team members into one proceeding and shall not have the authority to fashion a proceeding as a class action or to award relief to a group of team members in one proceeding.

The arbitrator shall be bound by and shall apply the state or federal substantive law that would be applied by the United States District Court for the District where the dispute arose.

The arbitrator shall also be bound by any applicable company handbooks, rules, policies and procedures.

The arbitrator shall have no authority, however, to add to, detract from, change, amend or modify any law, handbook, rule, policy or procedure in any respect. Nor shall the arbitrator have authority to consider or decide any matters that are the sole responsibility of the company in the management and conduct of its business.

**Rule 24.    Relief**

The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court. The arbitrator shall have the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law.

If the arbitrator orders reinstatement, the company shall have the option, within fourteen (14) calendar days of receipt of the award, to request that the arbitrator make a monetary award in lieu of reinstatement. If the company makes such a request, the arbitrator shall make a monetary award which the company, at its discretion, may pay in lieu of reinstatement. The arbitration hearing shall be reopened for additional proofs on this issue if either party so requests.

**Rule 25.    Arbitrator's Award**

The arbitrator shall within thirty (30) calendar days of the closing of the hearing submit to the parties a written award signed by the arbitrator. The award shall specify the relief awarded, if any, and the elements and basis for any monetary award. The award shall be accompanied by a written opinion signed by the arbitrator that shall include findings of fact and conclusions of law.

The arbitrator's award shall be final and binding on both the company and the team member and any court of competent jurisdiction may enter a judgment on the award. Judicial review shall be limited, as provided by law.

The parties shall accept as legal delivery of the award the placing of the award or a true copy in the mail, addressed to a party or its representative at the last known address, personal service of the award or the filing of the award in any manner that may be required by law.

## Rule 26.   Fees and Expenses

If the team member elects to select the arbitrator from the panel proposed by the company, the team member shall pay a non-refundable filing fee of $50.00 by check or money order made payable to Meijer.

If the team member elects to select the arbitrator through the American Arbitration Association, the team member shall be responsible for paying the employee portion of any filing fee and/or other administrative fees charged by AAA.

All costs of arbitration, including the arbitrator's fees and expenses and the cost of the hearing room shall be borne fully by the company, except as otherwise limited in these rules.

Each party shall bear their own discovery costs and expenses, except as may be awarded by the arbitrator in accordance with applicable law.

The expenses of witnesses shall be borne by the party producing such witnesses, except as may be awarded by the arbitrator in accordance with applicable law.

The fees and expenses of experts, consultants, interpreters and any others retained or consulted by a party shall be borne by the party producing such witnesses or utilizing such services, except as may be awarded by the arbitrator in accordance with applicable law.

The fees and expenses charged to a party by any attorney or other representative shall be borne by the party who retains the representative, except as may be awarded by the arbitrator in accordance with applicable law.

Any fees and expenses incurred as a result of any postponement shall be borne by the party requesting or causing the postponement of the hearing.

## Rule 27.   Extensions of Time

The parties may modify any period of time by mutual written agreement.  The arbitrator may for good cause extend any period of time established by these rules, except the time for filing a notice of intent to arbitrate and for making the award.

## Rule 28.   Enforceability

These rules and any award rendered pursuant to them shall be enforceable under and subject to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq.

## Rule 29.   Severability

If any of these rules or parts thereof are determined by any court with jurisdiction to be unlawful, invalid or unenforceable, those provisions shall be enforced to the greatest extent permissible under the law and all remaining rules and provisions shall continue in full force and effect.

   Form(s) Used:

Case 1:08-cv-01446     Document 16-4     Filed 08/28/2008     Page 15 of 22

Dispute Resolution Agreement and Agreement PL352
For Final and Binding Arbitration

# TAB F

| | |
|---|---|
| **From:** | LEE LYNAM (CommServ) |
| **To:** | MEIJER LIST |
| **Date:** | Mon, Mar 22, 2004 5:04 PM |
| **Subject:** | DISPUTE RESOLUTION PROCEDURE |

MARCH 22, 2004

MEMO TO:    TEAM MEMBERS

FROM:         LEE LYNAM

SUBJECT:    DISPUTE RESOLUTION PROCEDURE

Meijer has made improvements to the company's existing dispute resolution procedures and has combined them into one comprehensive procedure for resolving disputes called the Meijer Team Member Dispute Resolution Procedure or "DRP."

The DRP generally applies to all full-time and regular part-time team members in the company, except for Officers of the company and except for team members who are covered by a collective bargaining agreement.

The effective date of the DRP is March 22, 2004. The DRP replaces all other company dispute resolution policies or procedures that were in existence prior to that date.

Meijer has adopted the new DRP because we know that sometimes conflicts and disputes arise even in the best work environment. We believe that it is important to resolve those conflicts and disputes as fairly and quickly as possible.

Some of the improvements that are included in the DRP are more dispute resolution options, such as mediation, longer time periods and a broader scope of claims.

The new DRP includes several voluntary dispute resolution methods as well as mandatory, final and binding arbitration. It also includes a set of rules for arbitration. It is also intended to be an exclusive, mandatory, final and binding method of resolving disputes.

If you continue your employment after the effective date of the DRP, you and the company mutually agree to be bound by the terms of the DRP and to resolve all claims defined in the DRP as subject to arbitration through mandatory, final and binding arbitration, instead of through litigation in court. That means arbitration is your sole and exclusive means for resolving such disputes.

The new DRP is published in Policies and Procedures and a complete copy is also available on the Infonet (http://hr.meijer.com/policies/0090.htm). It is the company's goal that all eligible team members receive a copy of the handbook. If you have not yet received a copy, please ask for one from your unit administrative assistant or print it from the Infonet.

Thank you.

# TAB G



Home | Search | Departments | Tools | Feedback | Help

# Team Member Dispute Resolution Procedure Improved

Meijer has made
improvements to the
company's existing dispute
resolution procedures and has
combined them into one
comprehensive procedure for
resolving disputes called the
Meijer Team Member Dispute
Resolution Procedure or (DRP).



The DRP generally applies to
all full-time and regular part-time team members in the
company, except for Officers of the company and except for
team members who are covered by a collective bargaining
agreement.

The effective date of the DRP is March 22, 2004.  The DRP
replaces all other company dispute resolution policies or
procedures that were in existence prior to that date.

Meijer has adopted the new DRP because we know that
sometimes conflicts and disputes arise even in the best work
environment.  We believe that it is important to resolve those
conflicts and disputes as fairly and quickly as possible.

Some of the improvements that are included in the DRP are
more dispute resolution options, such as mediation, longer time
periods and a broader scope of claims.

The new DRP includes several voluntary dispute resolution
methods as well as mandatory, final and binding arbitration.  It
also includes a set of rules for arbitration.  It is also intended to
be an exclusive, mandatory, final and binding method of
resolving disputes.

If you continue your employment after the effective date of the
DRP, you and the company mutually agree to be bound by the
terms of the DRP and to resolve all claims defined in the DRP as
subject to arbitration through mandatory, final and binding

arbitration, instead of through litigation in court. That means arbitration is your sole and exclusive means for resolving such disputes.

The new DRP is published in Policies and Procedures and a complete copy is also available on the Infonet (http://hr.meijer.com/policies/0090.htm). It is the company's goal that all eligible team members receive a copy of the handbook. If you have not yet received a copy, please ask for one from your unit administrative assistant or print it from the Infonet.

---

1999- 20062002© by Meijer Stores Limited Partnership. "Legal Notice" to continue with the hyperlink back to the Legal Notice on the Infonet home page.

# TAB H

NOTICE TO TEAM MEMBERS<br>(OMP, Indiana, Illinois and Traverse City)<br>REGARDING THE MEIJER TEAM MEMBER<br>DISPUTE RESOLUTION PROCEDURE ("DRP")

Meijer has made improvements to the company's existing dispute resolution procedures and has combined them into one comprehensive procedure for resolving disputes called the Meijer Team Member Dispute Resolution Procedure or "DRP."

The DRP generally applies to all full-time and regular part-time team members in the company, except for Officers of the company and except for team members who are covered by a collective bargaining agreement.

The effective date of the DRP is March 22, 2004.  The DRP replaces all other company dispute resolution policies or procedures that were in existence prior to that date.

Meijer has adopted the new DRP because we know that sometimes conflicts and disputes arise even in the best work environment.  We believe that it is important to resolve those conflicts and disputes as fairly and quickly as possible.

Some of the improvements that are included in the DRP are more dispute resolution options, such as mediation, longer time periods and a broader scope of claims.

The new DRP includes several voluntary dispute resolution methods as well as mandatory, final and binding arbitration.  It also includes a set of rules for arbitration.  It is also intended to be an exclusive, mandatory, final and binding method of resolving disputes.

If you continue your employment after the effective date of the DRP, you and the company mutually agree to be bound by the terms of the DRP and to resolve all claims defined in the DRP as subject to arbitration through mandatory, final and binding arbitration, instead of through litigation in court.  That means arbitration is your sole and exclusive means for resolving such disputes.

The new DRP is published in Policies and Procedures and a complete copy is also available on the Infonet (http://hr.meijer.com/policies/0090.htm).  It is the company's goal that all eligible team members receive a copy of the handbook.  If you have not yet received a copy, please ask for one from your unit administrative assistant or print it from the Infonet.

Date Posted_____/_____/_____  Posted by_____

Date Removed_____/_____/_____  Removed by_____